524-0307, Zillow Inc. v. Moultrie County, at an L. Again, as I was just saying, we're taking this case out of order, just the judicial economy, let's just call it that. Counsel, I told the last set of attorneys, Justice Barberis had a previously scheduled seminar to attend that he forgot to tell the clerk, so he is not with us today. He will obviously listen to the oral arguments prior to making a ruling. So with all that, Mr. Hanlon, are you ready to proceed? Yes, sir. Then come right up and go right ahead. May it please the court, counsel, ladies and gentlemen, my name is Robert Hanlon. I'm a very special assistant state's attorney for Moultrie County. Cutting to the quick with respect to this case, as time is limited here, this case is about a single FOIA request seeking a 2020 assessment file from the Moultrie County Assessment Office. The testimony of trial was that the 2020 assessment file was provided. Now, the burden of trial is on the plaintiff to establish all facts to support the plaintiff's cause of action. It's the plaintiff who has a burden at trial for each element of its cause of action. In FOIA, there's numerous subsections, and each of these subsections has its own unique set of burdens. The first among them is the burden to establish, one, that there was a FOIA request, and two, it was denied. Now, this is where things get a little murky. I might even say that it went off the rails. I apologize to the court for my voice here today. I came down with something the other day, and so I'm a little under the weather. So, if you don't understand something I'm saying, just let me know, okay? Is that how it works? Yes. Well, I think I complicated matters by my son's wedding this last weekend. But, getting back to the case, this is an issue where, in essence, the case goes off the rails. Inconsistent with meeting its burden, Zero failed to establish a trial that was denied the 2020 assessment file. The court rules should have granted the defendant's motion for directed verdict. What is clear is that the focus on a FOIA request and other documents, it appears as if the court below treated some of the subsequent documents as the FOIA request, as opposed to the actual exhibit to the complaint being the FOIA request. So, you have this ever-evolving standard of information that is sought by the plaintiff. On one hand, its letter says, I want the 2020 assessment file. Then it says, it gives you the understanding of what plaintiff's counsel intended by this statement. In that trial, we had a testimony of Lori Berringer. And Lori Berringer provided her understanding of what that request meant. And those two are very different things if you look at the closing arguments that opposing counsel made at trial. If you look at Lori's understanding, her understanding of the FOIA request, the actual requested information, was the 2020 assessment file that was free of charge. Now, the plaintiff did not call a witness from Zillow who said they didn't get it. They did not call a witness at trial to say that the request had a particular meaning to it. So, the particular meaning is left in an amorphous state to the determination by the public body as to what the request meant. There is no effort that I can see from the testimony, my focus is on the testimony, that the plaintiff could establish that they were denied the records they actually sought. So, we have these property record cards. And the property record cards contain detailed information. But the FOIA request that's at issue in the case doesn't ask for the property record cards. So, the plaintiff had the burden to establish that that particular FOIA request, that particular FOIA request that was attached to the complaint, was not complying with. So, that's what was at issue in the trial. So, when we get to the trial, we hear all sorts of testimony about other information that wasn't provided to them based upon, perhaps, the plaintiff's counsel's interpretation of what he intended to mean when he sent the FOIA request in. But obviously, for the reasons that we're all familiar with here in this courtroom, that it was an impossibility for them to call the very person who drafted the letter asking for the information because he was the counsel in the case. So, the issue here is that when the October 19, 2023 order was issued by Judge Rhodes, it concluded that as of the day of trial, the requested records were not received by Zilk. Now, I find that astonishing because there was no testimony as to what Zilk received or didn't receive because no one from Zilk testified. So, the court jumps to a conclusion as opposed to requiring the plaintiff to meet its burden. Almost all trials, and I'm sure that as you review trial transcripts, often it's the burden of the individual that carries the day at trial. So, what you have here is, just so we've drawn an analogy, it's as if to say, I want that red car, well, it's a red truck. Well, you didn't say truck, you said car. Well, what was it supposed to be, a car or a truck? Someone said, well, I want the red automobile with the tailgate that folds down and often referred to as a pickup truck that's right there. Then we would know exactly what that is. So, if you have an ambiguity, whose burden is it to clear up that ambiguity? Our intention is that the ambiguity was created by the plaintiff. The plaintiff had a burden to establish clearly and importantly, since it was an attorney writing the FOIA request, that attorney had the obligation to be clearer in it. And he had an opportunity to clear that up, but he didn't do that. So, I cited a number of cases that deal with the civil penalties and attorney's fees and so forth that are the consequence of noncompliance. But I don't believe we can get to those consequences unless it's established that there has been noncompliance. So, here... Let me ask you about those attorney fees. Are they still pending? Has the court awarded those? Well, the court has not awarded them. Ironically, the court asked the defendant to deduce additional information so that it could ascertain that. But we had already completed the trial. So, if... You completed the trial and it's my understanding that Moultrie County didn't want to provide any further information. Well, I believe and I know that when Judge Rhodes made that request of us, I would be supplementing the record for the benefit of the plaintiff because the plaintiff failed to meet its burden. And so, we articulated to the court that because the plaintiff failed to meet its burden that we didn't feel obligated that we should have to supplement the record for the benefit of the plaintiff because the plaintiff never even asked for the information and they didn't produce it at trial. Well, let me ask you. There's two issues that remain in this case, it looks like to me. One is the issue of attorney fees whether the trial court grants attorney fees to the requesting entity, Zillow, and also whether there are penalties that should apply kind of in the nature of a punitive penalty. Well, I'm not sure... It hasn't been decided yet in this case. Well, but the burden of proof at trial was to prove their case. I understand the burden, but what I'm talking about is you have the FOIA request. That's one issue. Then there's the issue of attorney fees that they've requested. And then there's the issue of further penalties. So, there's three separate issues going on in the case as I understand it. Well, all FOIA cases have those same issues that are pending. And so, the trial judge has issued a ruling on the first issue that is Moultrie County didn't provide the data that it was required to provide, right? No, that would be incorrect, Your Honor. Moultrie County was never required to provide that information. The reason Moultrie County was never required to provide that information, there was no request and discovery for that information. And more importantly, at trial, it wasn't proffered as an issue at trial. So, that issue should have been addressed at trial by a court discloser. What are we here on? Well... What is the issue we're here on? Well, it's a... The court will go right to 3041, which to appeal the decision under October 19 ruling. Okay. So, we're here on the October 19 ruling. Yes. And part and part of that ruling is the impetus to the issues of civil penalties. But you can't even get the civil penalties because we've already completed a trial. All of the issues should have been presented at that point in time. The trial was completed... That's one of the problems I'm having is it doesn't seem that this trial is complete. How does the trial close its proofs, have closing arguments, and not be complete, Judge? It was complete. It seems that it's reserved to the attorney fee issue and the civil penalty issue for later. And that's why we're here on 304A. But those issues were not reserved at the time of trial. So, the time of trial and the order for trial was all tribal issues. And since it was all tribal issues, they had an obligation to take care of those tribal issues at that time, not piecemeal this out over time. Well, what's our jurisdiction here? The court's jurisdiction was permissive appeal based upon 304A language. Well, 304A contemplates that there's less than all issues resolved. It involves multiple claims where there are fewer than all claims decided. And it's only because the trial court didn't rule on the things that the plaintiff had failed to present at trial. And so, I'm asking the court to overturn its October 19 ruling because we already had a trial on all these issues. But my question to you is why do we have jurisdiction? Well, the issue of jurisdiction was because it was permissive grant. But the trial court cannot impose jurisdiction on the appellate court. Yes, I understand that. Because it wants to. So, you had only one claim in this case, not multiple claims, and you have out of that one claim you have two issues that have not been decided. So, what makes this October 19 order final? I think that it's not final because the court below didn't make that final ruling and in essence was looking for direction from the appellate court with respect to the status of the case at that point in time. Which we don't give advisory opinions. Well, I would love to find a judge that would. So, my question remains and it's probably not fair to only ask you this question because Zillow needs to be asked the same question. But if you just told me that the order is not final then how do we have jurisdiction? Just because the trial judge says 304A findings? I believe that that's the only way that we get here is with a 304A finding judge. And the docket entry where you gentlemen met and decided to do a 304A finding I could not find in the record where there was any report of proceedings and there's no bystander report. So we don't know what was said in order to get you here. So, do you have any help there? Nobody's given us any indication as to why you're here before there's a final ruling on one cause of action. I noticed that my little blinking light has been going off here. You're on the hot seat. I can't help you. I can't help you there. You're on the hot seat. I can't help you. I'm going to ask the same question of your opposing counsel. I don't see how we have jurisdiction here. October 19 was a long time ago. I resigned my position as the state's attorney of Shelby County. Lots has happened. So I wish I could tell you exactly what happened there. But it would be disingenuous for me to say that I recall specifically. Okay. I appreciate that. Thank you. And obviously you're having a good time. Thank you, sir. Mr. Craven? Just in case, are you going to cut to the chase right off the bat? I am. If I can at least say thank you, Your Honors, good morning, and may it please the Court. Yes, Mr. Craven. Joseph Craven on behalf of Appaloozie Zillow. Mr. Craven, how do we have jurisdiction here? The reason this Court has jurisdiction, as this Court alluded to, there were three different issues before the lower court. The underlying FOIA claim and then as a result of how the lower court ruled on the FOIA claim, the issues of attorney's fees and civil penalties can then be ruled on. Those remain pending. So we have no jurisdiction here. Because there's no final order. I would assert that this Court has jurisdiction under Rule 304A because the October 2023 order I have it here reading from page C341, page 11 of Judge Rhoades' record states that the Moultrie County Assessment Office in Moultrie County are enjoined from withholding the records requested by the plaintiff and are ordered to produce the records requested by the plaintiff. I believe this Court was referencing whether or not an order to produce the records had been issued and this order does so. It specifies that the order does not dispose of all claims and under 304A the judgment must dispose of an entire claim even if the plaintiff stated the claim in several different ways and several different counts of the complaint. So you have one claim, which is your FOIA claim and your attorney fees and civil penalties arise out of that one claim. So the trial court cannot impose appellate jurisdiction under 304A under those circumstances. And I would say, I apologize I don't have the site before me. It's the case out of the 4th District, the Roxanna Community School District case that addresses whether or not the petition for attorney's fees can be issued after the underlying civil penalty issue. Well, I'm saying it can be. That's the problem. That's exactly what I'm saying is you have the right to have that disclosed of after the judgment has been entered and that's why this in my view at least doesn't appear to me to be a final order. But I believe the Court has entered an order finding there is no unjust reason to delay enforcement or appeal of its order. And trial courts can make those findings but they can't give us jurisdiction. Just because they say it doesn't mean we get jurisdiction. So we have jurisdiction problems where you have one claim, you have a FOIA claim. You have the right after the judgment to still get your attorney fees. That arises as a result of your FOIA claim and you have a right to civil penalties under the statute. That arises as a result of your FOIA claim. Under 304A that's a single claim and all the other issues arise out of the single claim. 304A deals with multiple claims where you have less than one decided. But we still need a final judgment. And I would pose that the final judgment has been rendered on the FOIA claim that the defendants wrongfully withheld. Because the 304A ruling came about because the order had been entered in October requiring defendants to produce the records. Defendants had not done so and plaintiffs were left in a position of do we file a petition for attorney's fees? Apparently going up on appeal seeking production of the records they've been enjoying from withholding. Why didn't you just file for attorney fees? Because if it was going to be on appeal it would have been a waste of judicial economy. Either on appeal You would have had everything resolved when you came up on appeal. Now we have multiple appeals potentially. But then that would have still been the same case had it gone on appeal. Let's go down that trail of all three issues being ruled on. Either the appellate court then rules on the underlying issue of was it a wrongful denial under FOIA? And the trial court's issue on attorney's fees and civil penalties the hearings on those matters would have been unnecessary. Or we go up on appeal, the order is affirmed, and we have to file a new petition for attorney's fees because the issue of attorney's fees allows us to cover appellate costs and fees as well. And we would have had to go back to the trial court. So on the issue of finality of attorney's fees I would posit that that can't be done because the case is on appeal. Even if the issue had been ruled on that you get X amount of attorney's fees that issue hasn't been raised before the court. The issue the final order issued that had no just reason for delay of enforcement or delay that language was whether or not defendants violated FOIA. And it's our position that... A 304A deals with multiple claims. You only have one claim here. And I would say there is a claim for both the FOIA violation and a claim for attorney's fees. How do you get to attorney fees without a FOIA claim? By proving the underlying FOIA claim. Exactly. I agree with you there. It arises out of the FOIA claim. You can't get attorney fees without a FOIA claim. But the attorney's fees is not an element of the FOIA claim. Let me ask you this. Since I've raised this issue would you gentlemen like the opportunity to brief the issue of jurisdiction? Because I'm of the view that you have no jurisdiction here. That you don't belong in this appellate court. If I can just support and also tell society we'll cut you both some slack on the time debate for sure. I would not wish to do that because I haven't listened to your honor and thought about this as I sit here right now I believe it would be futile for me to do so. Okay. I just wanted to give you the opportunity but I understand your argument Mr. Craven. If given the opportunity I believe plaintiff would request the opportunity to brief the issue for the sake of judicial economy. It was plaintiff's position to begin with that this didn't need to go back and forth six or seven different times that let's rule on the underlying issue once and get it done with and then rule on the issue of attorney's fees and civil penalties. But I tend to agree with Justice Cage that was counterproductive. They should have decided all of it at the same time instead of sitting it up here to see what happens then going back possibly. And the judge should have decided all of the issue and then you could have appealed on all of those. But if the issue of civil penalties and attorney's fees had then be appealed and again if plaintiff had succeeded on appeal they would go back to again have another hearing on attorney's fees. It could be a vicious cycle of those three were justified then they weren't justified then they What you're saying is you want your appellate fees too but the fees the idea of the attorney fees was you won your FOIA request so you get your fees related to that. Nobody says you get your appellate fees just because you go up on appeal. That's a totally different issue because if you didn't get the 304A finding your appellate fees wouldn't come until after everything was over anyway. You see what I'm saying? The only reason you're here is a 304A finding from a trial judge. On the underlying FOIA claim, correct? Right, on the October 19th order which is a single claim with three elements in it. It's like how can that be any different than a negligence case where you're asking for compensatory and punitive damages and then you decide the compensatory and come up on appeal and say well I wanted to decide the punitives later to see how the court ruled. Because I would, well I understand the concept that these are all underlying the request made by plaintiff to defendant. The attorney's fees claim cannot be raised until the party prevails under FOIA. So unless there's been either. But you did prevail. Right. So that's element number one of the attorney fee claim. So then the trial court should have been at that moment gone to the other two. But instead it entered a 304A I'm. Erroneously. And I understand the court's position. Erroneously entered that finding. And that's why given that we had not addressed this in the briefing, I would request the opportunity if the court was willing to address the jurisdictional issue. I have no problem with giving him whatever time he's set in, 14 days, whatever you prefer. Yeah. I think if he wants it since I raised it, we should give him some time if you want it. And we would give Moultrie County the time as well, even if you decide not to do that. But I think the, just so it's clear, for Justice Barbaros' benefit, the sole issue to be raised is whether we have jurisdiction under 304A. That's it. That's the only question I'm asking. I don't want to hear about anything else. How many days do you want to hear from him? I would add, Mr. Craven, could you get that done in 14 days? That's acceptable, Your Honor. Absolutely. And then, if Moultrie could have 14 days thereafter to file any response that you would choose to do? If the court could include that language that says it's sort of permissive on our part so that it would be mandatory filing. Absolutely. I would only ask that if you decide not to file, that you send a letter to the clerk so that we know and it doesn't delay our disposition. That would be great if you would do that. Will there be a page one, Justice? Yes. Absolutely. Can you do it in 10 pages? Absolutely. Okay. Great. Let's do it. Thank you very much. Madam Clerk, would you enter that order? Thank you. Okay. If I may ask a brief procedural... And you can go on with your argument. I'm stuck. And that's why, if I may briefly address a few of the points just that were raised prior to jurisdiction. Go ahead. In terms of the underlying FOIA claim, plaintiffs refute that the only evidence introduced to trial was a brief snippet of Ms. Berenger's testimony. There was a long list of pieces of evidence and testimony elicited at trial demonstrating that this was a clear, concise FOIA request. It was not just give us the 2020 assessment file. It was a letter written stating that plaintiff had received this file in the past and is requesting the same updated file for 2020. I did find it interesting that you called nobody to say that you received the file. And I would say that we did call someone. We called Ms. Berenger. That was an accurate witness. You called nobody from your company regarding this matter. And through her, Ms. Berenger introduced, we introduced Exhibit 19, Plaintiff's Exhibit 19, into evidence demonstrating the request, the response, the reply requesting clarification on if further documentation would be supplemented, and the point-blank denial from Ms. Berenger stating, here's what was provided and here was not provided. In plaintiff's mind, it can't be more clear that Ms. Berenger through that email said, we are not providing this. And further stating in the email from Ms. Dobson that the records would be provided at a cost of $2,500. No one had ever questioned whether or not the request was for public records, what the request meant, or if there was issue. There was no issue raised in the initial response stating, here's part of the records. Instead, they provided the subset of records, and then upon request for clarification from plaintiff clarifying, would more records be forthcoming? We recognize you've left out A, B, and C. Historically, here's what you've provided, demonstrating what you've provided, and now you're not providing it. Will you be doing so? And their answer was unequivocally, no. Not, we don't know what you mean. Not, can you clarify what the scope of your request is? Was their answer no, or was their answer you can get it for $2,500 because of this third-party vendor? And it was exactly that. So it's not no. You can have it, but it's now in the hands of this third-party vendor. And respectfully, Your Honor, I would disagree because under Section 6D, an imposition of a fee inconsistent with Section 6 is a withholding of public records in and of itself. Okay, but your client, as I view this case, your client just didn't want to pay the $2,500 to get this. You wanted to pay the statutory minimum for the records. As all individuals and companies should under FOIA. And Moultrie County would have given you the records had they had them in their possession, but they had outsourced them to a third party by this time. And again, I would argue under FOIA, the records were in their possession, consistent with Section 7-2 and under Rushden v. Department of Corrections. Records in the possession of a private party hired for a governmental purpose for the purposes of the public body fulfilling their statutory duties are records of the public body. If records are in the possession of a third party, are they in the possession of Moultrie County? Yes. Under FOIA, yes. Okay. Well, why not just pay the $2,500? Because, quite frankly, Your Honor, because number one, under FOIA, no one should be required to, whether it be Zillow or me or anyone in this courtroom. But number two, no one has ever explained where that $2,500 calculation came from. It changed. The testimony of trial demonstrates that it changed from $2,500 to $2,250 to $2,400. No one ever explained whether or not that was manpower, whether or not that was to put it on a flash drive or a CD. And again, plaintiffs never requested any specific format. We just requested the records. But under Section 3, there is to be no individual or entity to have exclusive access or exclusive right to disseminate the public records. And so this could be a situation, and again, it's not an issue because the question is simply were the records withheld or not. But no one has any idea how that number was calculated. And while it may seem strange that Zillow, not willing to pay $2,000 in one county, is the issue, it's not just that. If Zillow were to pay $2,000 for every county in the state of Illinois, I believe there's 102, which puts us at over $200,000 on a yearly basis. And there's no statutory justification for the imposition of that fee in this situation. The General Assembly allows for when records may be provided. And it appears in this situation that Moultrie County, knowing that it had an obligation to provide public records as the public policy of Section 1 states, it is the primary duty of public bodies to respond to FOIA or physical obligations notwithstanding. FOIA is not a new concept. It's not a new act. But if a county is required to do a contract that requires them to pay to access their own public records, why should the requester be punished for that? Wasn't there testimony, though, that the information you sought was available on the website? And I would contest that. I would say no, it has not. The information is not available so there was no testimony on that? I take issue with the distinction of if the information and whether or not the records requested were available online because they were two separate and distinct items. The property record cards defendant's brief alludes to are individual property record cards displaying data for each and every parcel in Moultrie County. And are those on the website? Apparently so, but there's nowhere in the record directing us to that website. The records requested were for the data in the aggregate format, which is what was provided for the first 10 items of information in that first email response. That's why plaintiff believes that there's no confusion over if it was the aggregate data or the individual parcels being requested. Defendants provided the aggregate historically and they provided it in response and offered to provide it for $2,500. The property record cards are separate and distinct from the aggregate data, which is exactly what the two garlic cases cited to in defendant's brief, Garlic v. Naperville Township and Garlic v. Bloomingdale Township refer to. In those cases, Mr. Garlic requested the data in its native file format. Again, here no such request, just ask for the file. There, the defendants directed him to the property record cards and the court said that's not the same. That's not reasonable access to the record requested. And the Supreme Court of Illinois has recognized similarly in the AFSCME case, again cited in defendant's brief, that it's not just the contents of the records that FOIA pertains to, but the records themselves. The Fogle, either Fogle or Fagle v. IDOT in appellate court case, had issue with an Excel spreadsheet. Was a locked version of an Excel spreadsheet the same as the requested unlocked Excel spreadsheet? And the answer was no. They are two separate and distinct items. And so, offering to provide tens of thousands of individual records is different than offering to provide one aggregate data that is available that was withheld. But even if that, we don't have to get there because that was never offered in this case. This is not a section 8.5 case where defendant says we understand your request, check out this website. This is a case of defendant saying no, we are not providing these records unless you pay $2,500. Any final thoughts before we let you go? I just suppose procedurally to get clarity on understanding we are submitting additional briefing on the sole issue of if jurisdiction exists under 304A for calendaring. Does the court anticipate further oral argument on either that or the underlying issues? No. And as we stated, so we're clear   you'll have 14 days 10 page limit and then Mulford County can decide if they want to respond and as Justice Cates did request, if you decide you are not going to respond, please contact the clerk at ASAP so she can let us know. Does that clarify? I believe so. So, rebuttal? Thank you. Thank you. Your Honor, you asked a pointed question. Why not pay the $2,500? It's really why we're here. This case began with a FOIA request from a law firm that has a plaintiff who is seeking attorney's fees. And that's the reality. We're here because they want attorney's fees. Now, I'm willing to ask the answer without answering the question, but that's the answer. With respect to whether or not they would get the records if they paid the $2,500, I don't have a citation for you within the transcript, but I know that those records were provided to them ultimately because they were tended to them on a flash drive. So, this idea that they weren't tendered the documents in the format that they wanted, that's nonsense. That's all I have. Any final questions? Thank you, Counselor. Obviously, we will wait for your brief or briefs, and then we will issue an order of due course.